## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

PATRICIA HARRISON, et al.,

                Plaintiffs,

v.                              CIVIL ACTION NO.   2:11-cv-00700

CHRISTOPHER BURFORD, et al.,

                Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the court is the defendants' Motion to Dismiss [Docket 5].   For the reasons provided below, this motion is **DENIED in part and GRANTED in part**.

### A.  Background

On September 13, 2009, Brian Good led numerous police officers on a high-speed chase that began on Virginia Street in Charleston and ended in Quick, West Virginia.   (Compl. [Docket 1], ¶¶ 11–12).   Good was shot and killed by one of the officers involved in the pursuit.   (*Id.* ¶¶ 12–13).   The complaint alleges that by pursuing Good, the police officers "acted in an unreasonable manner in disregard of the obvious risks," to Good's safety and to the safety of his passenger, Natasha Light.   (*Id.* ¶ 17).

On November 6, 2009, Patricia Harrison brought suit, individually and in her capacity as Administratrix of the Estate of Brian Good, against the City of Charleston in the Circuit Court of Kanawha County, West Virginia.   The complaint alleged that the city was vicariously liable for

- 1 -

the actions of the police officers who caused Brian Good's death.   (*Id.* ¶¶ 10, 16).   The Circuit Court of Kanawha County granted summary judgment in favor of the city.   The opinion explained that the City of Charleston is covered by the West Virginia Tort Claims Insurance Reform Act ("WVTCIRA"), which limits the circumstances under which a political subdivision is liable in a civil action for "injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision."   W. VA. CODE § 29-12A-3(b)(1).   Based on the WVTCIRA, the circuit court held as follows:

> The WVTCIRA prohibits a political subdivision from being held liable for the intentional acts of its employees.   Insofar as the shooting was intentional, the City of Charleston, a political subdivision, cannot, as a matter of law, be liable for its officers' shooting of Mr. Good.   Mr. Good's death was the result of the officers' intentional discharge of their weapons and Defendant, the City of Charleston, cannot be held liable and is entitled to summary judgment.

(Order Granting Def. City of Charleston's Mot. for Summ. J. [Docket 5-1], ¶ 14).

Subsequently, the plaintiff filed another lawsuit in the Circuit Court of Kanawha County, West Virginia, naming as defendants the City of Charleston, the Charleston Police Department, and the following individual officers:   Christopher Burford, Owen Morris, Thomas Ranson, Eric Johnson, and Brent Webster.   (Compl. [Docket 1]).   The plaintiff asserted claims for wrongful death; suffering prior to death; negligent hiring, training, and supervision; negligence; tort of outrage; and violation of civil rights.   (*Id.*)   The suit was timely removed to this court pursuant to 28 U.S.C. § 1446 and 28 U.S.C. § 1331.   (Not. Removal [Docket 1]).   The defendants then filed a Motion to Dismiss the case, arguing that it is precluded by the earlier state court action.   (Mot. to Dismiss [Docket 5]).   This motion is now ripe for review.

**B. Standard of Review**

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading.  *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).   Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   FED. R. CIV. P. 8.   As the Supreme Court reiterated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual allegations' but 'it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'"   556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) for the proposition that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'").   A court cannot accept as true legal conclusions in a complaint that merely recite the elements of a cause of action supported by conclusory statements.   *Iqbal*, 129 S. Ct. at 1949–50.   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570).   To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise the claim from merely possible to probable.   *Id.*

In determining whether a plausible claim exists, the court must undertake a context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more

- 3 -

than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).   A complaint must contain enough facts to "nudge[] [a] claim cross the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## C.  Discussion

The defendants argue that the complaint should be dismissed because the suit is precluded by the earlier state court action based on the same facts.   There are two types of preclusion, res judicata and collateral estoppel.   "Res judicata, or claim preclusion, bars re-litigation of any claims that were or could have been raised in a prior proceeding between the same parties." *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008).   Meanwhile, collateral estoppel bars the re-litigation of specific issues actually determined in a prior action.   *Id.*   A state court judgment is given the same preclusive effect in federal court as it would have in the forum where the judgment was rendered.   *Id.*   In this case, the state court judgment was rendered in West Virginia. Therefore, whether the plaintiff's claims are barred by either res judicata or collateral estoppel is governed by West Virginia law.   *Id.*

"When entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact."   *Q Intern. Courier Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006) (citing *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000)).   In this case, the plaintiff has not disputed the factual accuracy of the record in the prior state court action.   Accordingly, the court will take judicial notice of the prior proceeding.

## 1.  Res Judicata

In West Virginia, res judicata "generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or the issues that could have been decided in an earlier action." *Slider v. State Farm Mut. Auto. Ins Co.*, 210 W.Va. 476, 480 (2001); *State v. Miller*, 194 W.Va. 3, 9 (1995). The purpose of the doctrine is "to permit repose on the part of defendants who have been subject to suit," so that they can "avoid 'the expense and vexation attending relitigation of causes of actions which have been fully and fairly decided.'" *Slider*, 210 W.Va. at 480 (quoting *Sattler v. Bailey*, 184 W.Va. 212, 217 (1990)). Moreover, the doctrine "serves to 'conserve judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Slider*, 210 W.Va. at 480 (quoting *Conley v. Spillers*, 171 W.Va. 584, 588 (1983) (internal quotations omitted)).

### a.  Claims against the City of Charleston

In this case, the first issue is whether the claims against the City of Charleston are barred by res judicata. Both the plaintiff and the City of Charleston were parties to the previous state court action. The plaintiff argues, however, that this case is not barred by res judicata because the state court did not consider the plaintiff's constitutional claims. (Pl.'s Resp. Mot. Dismiss [Docket 7], at 2).

There are three elements to preclude the litigation of an action based on res judicata. *Blake v. Charleston Area Med. Center*, 201 W.Va. 469, 477 (1997). First, there must have been a final adjudication on the merits by a court with jurisdiction. *Id.* Second, both the prior and current action must have involved the same parties, or individuals in privity with those parties. *Id.* Third, "the cause of action identified for resolution in the subsequent proceeding must be identical to the cause of action determined in the prior action or must be *such that it could have*

*been resolved, had it been presented, in the prior action*." *Id.* (emphasis added).  The test to determine whether a cause of action is the same is "to inquire whether the same evidence would support both actions or issues . . . .  If the two cases require substantially different evidence to sustain them, the second cannot be said to be the same cause of action and barred by res judicata." *Slider*, 210 W.Va. 476, 481 (2001) (quoting *White v. SWCC*, 164 W.Va. 284, 290 (1980)).

In this case, it is uncontested that the state court had jurisdiction to hear the case and did in fact issue a final adjudication of the matter.  Both the plaintiff and the City of Charleston were parties in the state court action and are also parties in the current action.  The constitutional issues arise from exactly the same factual allegations appearing in the state court action and could have been resolved if they had been presented in that action.  Accordingly, the court **FINDS** that all of the elements of res judicata are met.  It is **ORDERED** that the plaintiff's claims against the City of Charleston are barred by res judicata and are hereby **DISMISSED with prejudice**.

### b.  Claims against the Charleston Police Department

The complaint also names the Charleston Police Department as a defendant.  West Virginia law states that police departments are "subject to the authority, control and discipline of the municipalities that create them."  W. VA. CODE § 8-14-1.  The Charleston Police Department is not an independent suable entity, but rather is a subdivision of the City of Charleston.  *See Tofi v. Napier*, 2011 WL 38862118 at *4 (S.D. W. Va. Aug. 31, 2011) (concluding that "the City of Charleston Police Department is not a separate suable entity from the City of Charleston; it is merely a subdivision of the City").  Furthermore, even if the Charleston Police Department were a separate suable entity, it would be in privity with the City of Charleston and the claims against it

- 6 -

would be barred by res judicata.   Accordingly, the court **ORDERS** that Charleston Police Department is hereby **DISMISSED** as a defendant.

### c.   Claims against the Police Officers

The next issue is whether the plaintiff's claims against the police officers, Christopher Burford, Owen Morris, Thomas Ranson, Eric Johnson, and Brent Webster, are precluded by the prior state court action against the city.

### 1.   Official Capacities

The complaint names each officer and states that he is employed by the Charleston Police Department, but does not specify whether the officers are being sued in their individual or official capacities.   A lawsuit against a government official in his or her official capacity is a suit against the governmental entity itself.   *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (explaining that "an official capacity-suit is, in all respects other than name, to be treated as a suit against the entity").   Accordingly, claims against the individual officers in their official capacities are claims against the City of Charleston.   *Id.*   For the reasons discussed above, the claims against the City of Charleston are barred by res judicata.   Therefore, to the extent that the individual officers are being sued in their official capacities, these claims are barred by res judicata as discussed above and are hereby **DISMISSED**.

### 2.   Individual Capacities

Whether the claims against the officers in their individual capacities are barred by res judicata is a more difficult question.   Three elements are required to preclude the litigation of an action based on res judicata:   1) a final adjudication of the merits; 2) identical parties, or their privies; and 3) an identical cause of action or one that could have been resolved if it had been

presented in the action below.   *Blake v. Charleston Area Med. Ctr.*, 201 W.Va. 469, 477 (1997).

In this case, the plaintiff argues that the second prong is not met because the individual police

officers were not parties to the prior action.   The defendants, however, argue that the individual

officers are in privity with the City of Charleston, making the application of res judicata

appropriate.

Because the previous action in this case occurred in a West Virginia court, whether the

individual officers are in privity with the City of Charleston is a question of West Virginia law.

*See Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008).   Additionally, the court will consider that

an extreme application of res judicata to non-parties may violate due process.   *Richards v.*

*Jefferson Cnty.*, 517 U.S. 793, 796 (1996).

The concept of "privity" most often refers to a mutual or successive relationship to a

property right.   *See State ex rel. Div. of Human Servs.*, 183 W.Va. 220, 224 (1990).   In the

context of res judicata, however, the concept is more difficult to define precisely.   The West

Virginia Supreme Court of Appeals has said that "'[p]rivity is not established . . . from the mere

fact that persons may happen to be interested in the same question or in proving the same facts.'"

*State v. Miller*, 194 W.Va. 3, 13 (1995) (quoting 46 AM. JUR. 2D JUDGMENTS § 532 (1969)).

Rather, "the key consideration for its existence is the sharing of the same legal right by the parties

allegedly in privity, so as to ensure that the interests of the party against whom preclusion is

asserted have been adequately represented."   *W. Va. Human Rights Comm'n v. Esquire Grp., Inc.*,

217 W.Va. 454, 460–61 (2005).   In essence, privity "is merely a word used to say that the

relationship between one who is a party on the record and another is close enough to include that

other within the res judicata."   *Rowe v. Grapevine Corp.*, 206 W.Va. 703, 715 (1999) (quoting

- 8 -

*EEOC v. U.S. Steel Corp.*, 921 F.2d 489 (3rd Cir. 1990)); *see also Nash Cnty. Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484, 494 (4th Cir. 1981) (quoting *Bruszewski v. United States*, 181 F.2d 419, 423 (3d Cir. 1950)) ("Privity states no reason for including or excluding one from the estoppel of a judgment.   It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within res judicata."). To determine whether two parties are in privity, the relevant question is whether it is proper for one to be bound by the prior judgment against the other.   Therefore, the question in this case is whether the relationship between a Charleston police officer and the City of Charleston is "close enough to include [the officers] within the res judicata." *Rowe,* 206 W.Va. at 715 (quoting *EEOC v. U.S. Steel Corp.*, 921 F.2d 489 (3rd Cir. 1990)).

Courts have disagreed as to whether an employee and an employer are in privity for res judicata purposes.   Privity between an employer and employee is not automatic. *Gentry v. Farruggia*, 132 W.Va. 809, 809 (1949) (stating that a principal-agent relationship does not itself create privity of interest).   Instead, the question is whether the interests of the parties are aligned with respect to the litigation. *See West Virginia Human Rights Comm'n v. Esquire Grp., Inc.*, 217 W.Va. 454, 460 (2005) (quoting *Gribben v. Kirk,* 195 W.Va. 488, 498 n.21 (1995)) ("[P]reclusion is fair so long as the relationship between the nonparty and a party was such that the nonparty had the same practical opportunity to control the course of the proceedings that would be available to a party."); *see also Jones v. SEC*, 115 F.3d 1173, 1180 (4th Cir. 1997) (explaining that to be bound by a previous litigation, a nonparty must be "so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved").

- 9 -

In this case, the issue is whether the interests of the police officers in their individual capacities are aligned with the interests of the City of Charleston in the underlying litigation.   The defendants assert that because the City of Charleston was sued based on respondeat superior liability, its interests are necessarily aligned with that of its employees.   At first glance, this argument is attractive.   Normally, an employee's liability is a necessary element of an employer's vicarious liability.   Therefore, an employer who is sued based on respondeat superior will often be in privity with the employee.

Some states have gone so far as to adopt a per se rule that a suit against an employer based on respondeat superior will always bar a later suit against the employee.   *See, e.g.*, *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008) (applying Illinois law).   The rationale behind this rule has been explained as follows:

> [T]he operative facts and law controlling a servant's direct liability are always identical to those that determine the vicarious liability of his master . . . .   If the master is vicariously liable, the servant must be directly liable (and vice versa); if the master is not vicariously liable, the servant cannot be directly liable (and vice versa.)

*Id.*   This rationale, however, does not extend well to cases where the employer is a governmental entity.   In such cases, the employer and employee each may be entitled to different types of immunity.   For example, government officials sued in their individual capacities are entitled to assert the defense of qualified immunity.   However, qualified immunity is not available to municipalities.   As a result, a finding of a constitutional violation is conclusive as to a municipality's liability but not as to the liability of the individual who committed the violation. *Int'l Ground Transp. v. Mayor & City Council of Ocean City, Md.*, 475 F.3d 214, 219 (4th Cir. 2007).   Therefore, while the litigation interests of a city being sued under respondeat superior might often be similar to the interests of the employee, they are not identical.

- 10 -

This case presents a clear example of a situation in which the interests of the government are not aligned with the interests of individual officers. The Circuit Court of Kanawha County granted summary judgment in the City's favor based on the WVTCIRA, which states that "a political subdivision is not liable in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision," except as provided in the statute. W.Va. Code § 29-12-A-3(b)(1). The court explained that under the WVTCIRA, a political subdivision may be held liable for an employee's negligence, but not for intentional acts of its employees. (Order Granting Def. City of Charleston's Mot. for Summ. J. [Docket 5-1], ¶¶ 6, 8–9). Because the court had found that the shooting was intentional, the City was immune from liability under the WVTCIRA. (*Id.* ¶¶ 11–14).

In addition to providing that a political subdivision is immune from liability when an employee acts intentionally, the WVTCIRA also provides immunity to employees of political subdivisions. This immunity applies with three exceptions:

> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
> (3) Liability is expressly imposed upon the employee by a provision of this code.

W. Va. Code § 29-12A-5. The statute further provides that "[t]he immunity conferred upon an employee . . . does not affect or limit any liability of a political subdivision for an act or omission of the employee." *Id.*

The statute has the effect of permitting a political subdivision to be sued only if the employee acted negligently, rather than intentionally. W.Va. Code § 29-12A-4(c)(2); *Beckley v.*

*Crabtree*, 189 W.Va. 94, 97 (1993).   At the same time, an individual employee is immune from liability for simple negligence committed within the scope of his employment.   W.Va. Code § 29-12A-5(b); *Beckley*, 189 W.Va. at 96.   Therefore, the city's position in the previous suit—that the shooting was intentional—permitted the City of Charleston to take advantage of immunity under the WVTIRCA.   This position was beneficial to the City.   However, it would not have protected the officers themselves from individual liability.   Therefore, it cannot be said that the individual officers' interests were substantially the same as the interests of the City of Charleston.

Additionally, the rule of differing capacities supports a conclusion that the individual officers are not in privity with the City of Charleston.   The rule of differing capacities provides that "a party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity."   Restatement (Second) of Judgments § 36(2).   The rule was adopted by the Fourth Circuit in *Andrews v. Daw*.   201 F.3d 521, 521 (4th Cir. 2000).   In that case, the court held that dismissal of claims against a highway patrol trooper sued in his official capacity did not bar a subsequent suit against him in his individual capacity.   *Id.*   The court said that a government official in his official capacity is not in privity with himself in his personal capacity.   *Id.* at 525.   The court explained that "different legal theories of liability are required for the plaintiff, and different defenses are available to the defendant, in a personal-capacity action than in an official-capacity action.   These differences indicate that a government official in his official capacity does not represent precisely the same legal right as he does in his individual capacity."   *Id.* (internal citations and quotations omitted).   Other courts have reached similar conclusions.   *See Mitchell v. Chapman*, 343 F.3d 811, 823 (6th Cir. 2003) ("The rule of differing

- 12 -

capacities generally operates to allow a subsequent individual capacity suit against a government official even where a prior suit alleged an official capacity claim against the same official."); *Warnock v. Pecos Cnty., Tex.*, 116 F.3d 776, 777 (5th Cir. 1997) (holding that a previous suit against a county did not bar a later suit against officials in their individual capacities); *Headley v. Bacon*, 828 F.2d 1271, 1280 (8th Cir. 1987) ("[L]itigation involving officials in their official capacity does not preclude litigation in their personal capacity.").

The wisdom of the rule of differing capacities becomes clearer in light of the following principle: "Res judicata works both ways or not at all. If the judgment in the first action . . . had resulted in a judgment in the plaintiff's favor, would this plaintiff now have a fixed right to also recover against [the nonparty]? We think not." *Barnett v. Worfolk*, 149 W.Va. 246, 253 (1965) (quoting *Gentry v. Farruggia*, 132 W.Va. 809, 812 (1949)). In the present case, if the plaintiff had succeeded in his claims against the City, the court could not conclude that she had a fixed right to recover against the individual officer defendants. The individual officers did not have an opportunity below to litigate or assert any defenses they might have. And because the City is entitled to immunity under the WVTCIRA, it could escape liability by showing that the officers acted intentionally. Therefore, after considering the reasoning and weight of authority, I **FIND** that the individual officers in this case are not in privity with the City of Charleston for purposes of res judicata. Because the individual officers were not parties or privities in the action below, I **FIND** that res judicata does not bar the action against them.

### 2.  Collateral Estoppel

Next, the defendants claim that even if res judicata does not apply, the claims against the officers are precluded by collateral estoppel. Collateral estoppel, or issue preclusion,

"preclude[s] the litigation of an *issue* that has been previously resolved." *Stillwell v. City of Wheeling*, 210 W.Va. 599, 605 (2001) (emphasis in original).   The doctrine "'is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit.'"   *Id.* (quoting *Conley v. Spillers*, 171 W.Va. 584, 586 (1983)).   The West Virginia Supreme Court of Appeals has explained the circumstances under which collateral estoppel applies:

> Collateral estoppel will bar a claim if four conditions are met:  (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*State v. Miller*, 194 W. Va. 3, 9 (1995).   Unlike res judicata, "[c]ollateral estoppel . . . does not always require that the parties be the same."   *Id.*   However, due process requires that "any person *against whom* collateral estoppel is asserted must have had a prior opportunity to have litigated his claim."   *Conley*, 171 W.Va. at 594 (emphasis added).

In this case, there has been a final adjudication on the merits in the state court.   The party against whom the doctrine is being invoked, the plaintiffs, were also the plaintiffs in the state court proceeding.   However, in the previous action, the Circuit Court of Kanawha County concluded that the shooting was intentional, and therefore found that the City was immune from liability under the WVTCIRA.   (Order Granting Def. City of Charleston's Mot. for Summ. J. [Docket 5-1], ¶¶ 6–14).   The court did not make any findings regarding the reasonableness of the officer's actions or their entitlement to qualified immunity.   Accordingly, the issues presented in this case

are not identical to those actually litigated below.   The motion to dismiss based on collateral estoppel is hereby **DENIED**.

### 2.  Qualified Immunity

Finally, the defendants argue that the individual officers are entitled to qualified immunity from the constitutional claims.   42 U.S.C. § 1983 subjects any person who, acting under color of state law, deprives an individual of his constitutional rights to civil liability.   42 U.S.C. § 1983. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   It represents a balance between two significant interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."   *Id.*    "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right."   *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011).   Although a case exactly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate."   *Id.*

In this case, the plaintiff's complaint is difficult to decipher.   The plaintiffs argue generally that the officers' actions were unreasonable and constituted excessive force.   The Fourth Amendment governs allegations of excessive force by a police officer during an arrest. *Graham v. Connor*, 490 U.S. 386, 394 (1989).   The Fourth Amendment guarantees individuals

- 15 -

the right "to be secure in their persons . . . against unreasonable seizures."  U.S. CONST. AMEND. IV.  A court must consider several factors when determining if an officer's use of force is reasonable in light of the factual circumstances of the particular case.  *Graham*, 490 U.S. at 396. These factors are:  (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id*.  The reasonableness standard is an objective evaluation and a court must determine "whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his own subjective intent or motivation."  *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988).  However, courts are cautioned that "[t]he calculus of reasonableness must embody allowance for the fact that officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396.

In this case, the plaintiffs have argued that the officers' actions were unreasonable for two reasons.  First, because the officers violated the plaintiffs' rights by "engag[ing] in a high speed chase, for actions that would be classified as a misdemeanor."  (Compl. ¶ 11).  Second, because the high speed chase became unnecessary once the officers became aware of Brian Good's identity and home address.  (*Id.* ¶ 15).  The Supreme Court has stated that a "police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death."  *Scott v. Harris*, 550 U.S. 372, 385 (2007); *see also Sykes v. United States*, 131 S.Ct. 2267, 2273 (2011) ("Risk of violence is inherent to vehicle flight. . . .  It is well known that when

offenders use motor vehicles as their means of escape they create serious potential risks of physical injury to others.   Flight from a law enforcement officer invites, even demands, pursuit.").   In the instant case, the officers were in active pursuit of a fleeing suspect.   The complaint concedes that Mr. Good led the officers on a high speed chase that began on Virginia Street, continued through Mill Creek, and ended near Quick, West Virginia, where the police vehicles finally were able to barricade Mr. Good.   (Compl. ¶ 12).   The plaintiff's theory that the officers had a duty to disengage pursuit of Mr. Good, a fleeing suspect, simply because they knew his identity is contrary to logic and unsupported by the case law.

The plaintiff has not offered any other facts from which the court could conclude that the officers' actions were a violation of a clearly established right.   The plaintiffs only argument against qualified immunity is that resolution of the issue would be premature.   (Resp. Defs.' Mot. Dismiss [Docket 7], at 2).   However, the United States Supreme Court has made clear that qualified immunity issues are to be resolved at the earliest possible stage of the litigation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).   "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'"   *Id.*   In fact, "the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials will be resolved prior to discovery."   *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 625, 640 n. 2 (1987)).

In this case, even taken in the light most favorable to the plaintiff, the facts as set forth in the complaint are insufficient to overcome the officers' assertion of qualified immunity.   The facts as alleged by the plaintiff do not demonstrate a violation of a clearly established

- 17 -

constitutional right.   Therefore, the court **FINDS** that the individual police officers are entitled to qualified immunity.   Accordingly, Counts X, XI, XII, and XIV of the complaint are hereby **DISMISSED**.

### D.  Conclusion

For the reasons discussed above, the plaintiffs' claims against the City of Charleston, the Charleston Police Department, and the individual police officers in their official capacities are barred by res judicata and hereby **DISMISSED**.   With respect to the claims against the police officers in their individual capacities, the court **FINDS** that the officers are entitled to qualified immunity.   Therefore, Counts X, XI, XII, and XIV of the complaint are **DISMISSED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        June 7, 2012

Joseph R. Goodwin, Chief Judge